CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
JAN 3 0 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

BRENDA RICKMAN,          )    CASE NO. 4:05CV00032
                     )
      Plaintiff,       )
                     )
v.                   )    REPORT AND RECOMMENDATION
                     )
                     )
JO ANNE B. BARNHART, Commissioner   )    By:  B. Waugh Crigler
of Social Security,       )       U. S. Magistrate Judge
                     )
      Defendant.     )

This challenge to a final decision of the Commissioner which denied plaintiff's July 28, 2003 protectively filed claim for a period of disability, disability benefits and supplemental security income benefits under the Social Security Act (Act), as amended, 42 U.S.C. §§ 416, 423 and 1381 *et seq.* is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will recommend that an order enter AFFIRMING the Commissioner's final decision, GRANTING judgment to the defendant and DISMISSING this action from the docket of the court.

In a decision eventually adopted as a final decision of the Commissioner, an Administrative Law Judge (Law Judge) found that plaintiff, who was 47 years old with a high school education and with past relevant work as a food service manager and convenience store manager, had not engaged in substantial gainful activity since her alleged date of disability onset, July 22, 2003, and that she was insured for benefits through at least December 31, 2007. (R. 14.)

The Law Judge further found that plaintiff has diabetes mellitus with peripheral neuropathy, retinopathy, nephropathy, glaucoma, loss of vision in the left eye, hyperkalemia, hypertension, sleep apnea, obesity, and depression, which when viewed collectively are severe impairments, though not severe enough to meet or equal any listed impairment. (R. 15.) The Law Judge was of the view that plaintiff's allegations concerning her limitations were not totally credible, and that she retained the residual functional capacity to perform a significant range of sedentary work[1] which involves only occasional bending at the waist (stooping), occasional bending at the knees (crouching), occasional kneeling, occasional crawling, occasional climbing stairs, no climbing ladders, no exposure to unprotected heights or hazardous machinery, and only uni-ocular vision with no fine visual acuity. (R. 15, 18.) By application of the Medical-Vocational Guidelines ("grids") to plaintiff's exertional limitations, and, by reference to testimony provided by the vocational expert (VE), the Law Judge concluded that jobs as a cashier, order clerk, assembler, and general clerk were available to plaintiff, and that she was not disabled under the Act. (R. 17, 19.)

Plaintiff appealed the Law Judge's decision to the Appeals Council, which found no basis

---

[1]Sedentary work is defined as work which

[i]nvolves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); 20 C.F.R. § 416.967(a).

2

in the record, or in the reasons the plaintiff advanced on appeal, to review the Law Judge's decision. (R. 5-7.) Accordingly, the Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. This action ensued.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs and medical findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527- 404.1545 and 416.927-404.945; *Hayes v, Sullivan*, 907 F. 2d 1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F. 2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence which the court is to review for clear error or lack of substantial evidentiary support. 20 C.F.R. §§ 404.1527 and 416.927; *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

Plaintiff has filed a brief in support of her motion for summary judgment.[2] At the outset, the court notes that plaintiff refers only to evidence that is most favorable to her, choosing to overlook unfavorable evidence. For example, plaintiff has extensively described the treatment she received for her eye impairment in 2002 and 2003, yet she devotes only three sentences to the evidence relating to her treatment in 2004, when her eyesight was significantly improved. (Plaintiff's Brief in Support, pp. 6-14.)

---

[2]Throughout her brief plaintiff makes references to her treatment at Charlotte Primary Care by Joseph Davis. During the hearing before the Law Judge, plaintiff's counsel referred to Davis as "Dr. Davis" and as plaintiff's "primary doctor." (Tr. 287.) However, Davis is a *family nurse practitioner* (FNP), not a medical doctor. (*See* R. 236.)

3

Plaintiff initially argues that the Law Judge's finding relating to her residual functional capacity was "irrational" and contrary to the substantial evidence of record because it failed to accurately reflect her visual impairments. (Pl's Brief, p. 19.) To support this argument, plaintiff suggests that the Law Judge failed to recognize that she is "very close" to being disabled under § 2.02 [3] in that her visual acuity is correctable "*only to 20/100* in the remaining right eye." (*Id.* at 19 and 21 (emphasis added).) Plaintiff's contention that the visual acuity in her right eye is correctable only to 20/100 can be supported by the record as a whole but only by ignoring a great deal of the medical evidence, particularly that which is most recent. For instance, while there is evidence that at one time plaintiff's acuity in her right eye was seriously impaired, it was reported on January 23, 2004 and March 5, 2004 that her visual acuity had been corrected to 20/30. (R. 172, 176.) Besides the medical evidence, plaintiff's own testimony belies her argument. Specifically, she testified at the hearing that, in December 2004, her eyesight in her right eye was 20/30, and on January 4, 2005 it was 20/50. (R. 285.) Plaintiff's argument that the Law Judge erred by failing to recognize that the vision in her right eye is only correctable to 20/100 likewise is fatally flawed in that the evidence does not support her assertion.

Plaintiff also argues that the Law Judge's residual functional capacity finding is contrary to the substantial evidence of record in that the Law Judge failed to adequately address her visual limitations in the hypothetical presented to the VE. Specifically, plaintiff contends that the hypothetical did not reflect her "true visual limitations." (Pl's Brief, p. 21.) Again, plaintiff has

---

[3]Section 2.02 of the Listings provides for disability where the "[r]emaining vision in the better eye after best correction is 20/200 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 2.02.

4

elected to focus only on that evidence which supports her claim and discount the other relevant evidence. Plaintiff argues in her brief that "she cannot read, she 'listens' to the T.V., she cannot drive, etc." (Pl's Brief, p. 22.) However, at the hearing plaintiff testified that she has a valid driver's license and "took [herself] off the road." (R. 278-79.) When plaintiff was asked whether the doctor had recommended that she stop driving or otherwise advised her not to drive, she replied in the negative. (R. 279.) Plaintiff further conceded she was able to read the newspaper "[s]ome days," (R. 293), and when asked about television she replied "I *do* watch TV" (R. 293 (emphasis added)). Finally, plaintiff testified that she could read books with large print. (R. 294.)

The hypothetical question presented to the VE by the Law Judge was consistent with this testimony in that it contained the following limitations: "no fine visual acuity, or acuity for visual requirements would not and could not be performed by using only one eye, it would be uniocular [phonetic] but not binocular vision." (R. 298.) Although plaintiff argues that the Law Judge's hypothetical did not accurately reflect her visual limitations, it is interesting that when plaintiff's counsel was given an opportunity to examine the VE, he chose to ask no further questions. (R. 301.) The undersigned believes the Law Judge's finding that plaintiff has the ability to perform sedentary work which involves "only uni-ocular vision with no fine visual acuity" is supported by substantial evidence. (*See* R. 15.)

Plaintiff next contends that the Law Judge failed to consider the combined or synergistic effects of all her impairments when determining her residual functional capacity. In particular, she suggests that the Law Judge failed to evaluate the impact of her morbid obesity when

5

determining her RFC.[4] Notwithstanding its deletion as a listed impairment effective October 25, 1999, obesity may be identified as a medically determinable impairment which, in turn, could either medically or functionally equal to a listed impairment or combine with other impairments to render the claimant disabled. Social Security Ruling (SSR) 02-01p (September 12, 2002). As with any other impairment, the record must establish that it exists and that its effects are such as to vocationally impact the claimant. Thus, in contrast to § 9.09 of the Listings, the mere facts of weight and height no longer are determinative.

It is true that plaintiff's treating sources do refer to her condition as "morbid obesity," but, according to the cited Ruling, descriptive terms such as "severe" or "extreme" or "morbid" cannot establish the severity of the impairment or its effects on a claimant's work-related capacity. SSR 02-01p, ¶ 6. In that connection, none of plaintiff's treating sources suggest that plaintiff's obesity seriously impairs her functional capacity. The state agency consultative examiner and record reviewers either found moderate restrictions in the use of plaintiff's extremities (R. 131) or that she did not suffer any limitations as a result of her weight which would prevent her from performing sedentary work. (R. 208-215.) Moreover, plaintiff did not suggest in her testimony at the hearing that her obesity exacerbated the severity of her other medical impairments or limited her ability to perform sedentary work and, thus, reduced the value of her other evidence suggesting limitations on her daily activities. Accordingly, a reasonable fact finder could conclude that the record evidence did not support any limitations beyond those rather generously set forth by the Law Judge in his hypothetical examination of the

---

[4]At the time of the hearing before the Law Judge, plaintiff was 5'5" and weighed 316 pounds. (R. 272.)

6

VE[5]. (R. 298.)

Plaintiff also suggests that the Law Judge disregarded her complaints of decreased mobility caused by sensory loss in her lower extremities when he determined her residual functional capacity. To support this contention, plaintiff has cited solely to an evaluation performed by SSA neurologist, Carlos A. Williams, M.D. (Pl's Brief, p. 24; R. 129-130.) Interestingly, the limitations placed on the plaintiff by Dr. Williams were mild-to-moderate, and he noted that she had no difficulty standing on one leg with only "some problems walking tandem because of the sensory deficit." (R. 130.) The undersigned cannot say the Law Judge failed to account for this evidence in determining plaintiff's RFC, particularly the limitations he posed to the VE as part of his hypothetical examination.[6]

Because the undersigned concludes that neither the record of this case nor the cited SSR compelled the Law Judge to consider the effects of plaintiff's obesity beyond the consideration given, plaintiff's reliance upon *Morrison v. Apfel*, 146 F.3d 625 (8th Cir. 1998) to support reversal or remand for further proceedings is misplaced. First, *Morrison* was decided before § 9.09 was deleted from the Listings and certainly before SSR 02-01p was promulgated. In addition, while the facts relating to plaintiff's height and weight may not significantly differ, the medical facts relating to the effects of plaintiff's obesity are distinguishable. Finally, the hypothetical question posed to the VE in this case did account for the substantial evidence,

---

[5]Plaintiff's counsel elected not to inquire of the VE, thus deferring to the hypothetical facts presented by the Law Judge's examination. (R. 301.)

[6]The Law Judge determined that plaintiff was limited to work which involves only occasional bending at the wait (stooping), occasional bending at the knees (crouching), occasional kneeling, occasional crawling, occasional climbing stairs, and no climbing ladders. (R. 15, 18, 298.)

Case 4:05-cv-00032-JLK-BWC   Document 19   Filed 01/30/06   Page 7 of 8   Pageid#: 79

whereas it appears that the court in *Morrison* had quite a concern that the VE was not presented all the vocationally relevant evidence before rendering an opinion at the final level of the sequential evaluation.

For these reasons, it is RECOMMENDED that an order enter AFFIRMING the Commissioner's final decision, GRANTING the Commissioner's motion for summary judgment and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED:

U.S. Magistrate Judge

1-30-06

Date

8